IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| | ) Case No. 2:11-cr-04025-BCW |
| v. | ) |
| | ) |
| MASSOUD LATIFI, et al., | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT MASSOUD LATIFI'S SENTENCING MEMORANDUM**

Defendant Massoud Latifi ("Mr. Latifi") pursuant to Federal Rule of Criminal Procedure 32, respectfully submits this Sentencing Memorandum for the Court's consideration. In advance of Mr. Latifi's scheduled sentencing hearing on May 12, 2020, this memorandum will provide a basis on which the Court can impose an individualized sentence under 18 U.S.C. § 3553(a) that reflects not only the conduct to which Mr. Latifi pleaded guilty, but also his individual character and value. On the basis of the arguments and authority presented here, Mr. Latifi respectfully asks the Court to impose a sentence of 84 days, with credit for time-served, and an appropriate term of supervised release.

**I.     Factual and Procedural Background**

On November 3, 2011, Mr. Latifi was charged by Superseding Indictment with one count of violating Title 18, United States Code§ 371 and four counts of violating 13 U.S.C. § 305. On December 16, 2019, Mr. Latifi pleaded guilty to a single violation of count of 13 U.S.C. § 305, making false statements on a shipping export declaration, as charged in the Superseding Information in this case. Mr. Latifi's plea was entered pursuant to a plea agreement that included

1

the parties' agreement regarding sentencing, specifically that a sentence equal the time he has served in custody on this charge (84 days).

## II. Sentencing Analysis

The relevant law and facts discussed below weigh heavily in favor of the Court's approval of the parties' agreement and proposed sentence for time served. The below contains an analysis of the applicable United States Sentencing Guidelines, as well as the sentencing factors set out in 18 U.S.C. § 3553(a).

### a. Sentencing Guidelines

#### i. The Court Should Utilize U.S.S.G. § 2B1.1 to Calculate the Base Offense Level

The Government agrees that utilizing U.S.S.G. § 2B1.1 to calculate Mr. Latifi's Base Offense Level is reasonable, although does not agree regarding the amount of "loss" caused by Mr. Latifi's shipping declaration misstatement. (Doc. 57 at p. 2).

In estimating "loss" under 2B1.1, the Court need only to make a "reasonable estimate of the loss" for sentencing purposes. *United States v. Scott*, 448 F.3d 1040, 1044 (8th Cir. 2006). The general rule for calculating loss under Section 2B1.1(b) is that "loss is the greater of actual loss or intended loss" U.S.S.G. § 2B1.1 app. n3(A), and where loss cannot reasonably be determined, a "court shall use the gain that resulted from the offense as an alternative measure of loss." *Id*. at § 2B1.1 app. n3(b) (emphasis added).

This is particularly appropriate here, where the conduct did not result in any actual loss to any identified victim. (Doc. 51, PSIR at ¶ 15). Instead, the plan was to reduce the cost of shipping the goods at issue, yielding a gain for the defendants. As such, "gain" is the most appropriate measure of loss to use for sentencing purposes. The most accurate and reliable measure of what

2

WA 14741188.1

Case 2:11-cr-04025-BCW   Document 59   Filed 05/08/20   Page 2 of 11

was gained from Mr. Latifi's conduct is $50,297.40, the amount of proceeds from Mr. Latifi's offense. (Doc. 51, PSIR at ¶ 12).

Applying this definition of loss results in a slightly lower base offense level than that recommended by the Government. Under the false statement analog, § 2B1.1, the loss amount adds 6 levels to the base offense of 6 for a total offense level of 12 which, when § 3E1.1(a) is applied, results in a final offense level of 10.

<u>Calculation Under 2.B1.1:</u>
| | |
|---|---|
| Base Offense Level | 6 |
| Loss between $40,000-95,000 | +6 |
| **Adjusted Offense Level** | **12** |
| Acceptance of Responsibility | -2 |
| **Total Offense Level** | **10** |

### ii. The Court should not apply an Enhancement for Obstruction

Mr. Latifi objects to the Government's request that the Court apply a 2-level enhancement for what it calls flight to avoid prosecution. (*see* Doc. 51, PSIR at ¶ 21, Doc. 57, Govt. Sentencing Memo., at 3). The Government requests this enhancement for obstruction of justice based on Mr. Latifi's October 2010 travel to Iran to care for his ailing father-in-law, which was, without dispute, prior to the initiation of this case.

Mr. Latifi left Los Angeles for Iran on October 25, 2010; it was not until May 17, 2011 – some seven months later – that the original indictment was returned. While Mr. Latifi had cooperated with the government and provided valuable information, charges were not imminent and there was no restriction on his lawful right to leave the country to care for his father-in-law. In fact, no one from law enforcement requested that he restrict his travel in any way.

The enhancement under U.S.S.G. § 3C1.1 is not applicable to this situation because it is not designed for the factual situation presented here. Section 3C1.1 provides, in pertinent part, that "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the

3

WA 14741188.1

Case 2:11-cr-04025-BCW   Document 59   Filed 05/08/20   Page 3 of 11

administration of justice with respect to the *investigation, prosecution or sentencing* of the instant offense of conviction" the enhancement is appropriate (emphasis supplied). This investigation began in September 2007 (Doc. 51, PSIR at ¶ 5), just before a search warrant was executed at Mr. Latifi's home in December 2007 (*id.* at ¶ 16). Mr. Latifi's then voluntarily met with and provided information to federal investigators in March 2008 (*id*.). Communications between Mr. Latifi's prior counsel and the Government began at some point following and continued sporadically through late 2010, including some discussions of a potential plea. It is reasonable to assume that the investigation had concluded by the time counsel were discussing disposition, as it makes little sense to suggest that counsel for the Government and Mr. Latifi were discussing the disposition of the case while the investigation was still pending. As such, it is also reasonable to conclude that the investigative phase of the matter had concluded before Mr. Latifi was charged. Thus, if the investigation was concluded, Mr. Latifi's departure from the country did not "obstruct or impede" it because there was no investigation. By the same principle, as all parties agree that the first indictment was returned on May 17, 2011, neither was there a prosecution or sentencing to "obstruct or impede" when Mr. Latifi left the U.S some seven months earlier. In the absence of an investigation, prosecution or sentencing, § 3C1.1 does not apply here.

The application notes for § 3C1.1 further support this. The notes, including the non-exhaustive list set out in Note 4, identify conduct that encompasses either fleeing from custody, threatening other judicial participants, or utilizing deceit or other unlawful conduct to avoid prosecution. Only one addresses flight, and it is limited to "escaping or attempting to escape from custody *before trial or sentencing*; or willfully failing to appear, *as ordered*, for a judicial proceeding." See, § 3C1.1, note 4(E). As set out above, there was no trial or sentencing hearing in this matter, and Mr. Latifi had never been before a court in connection with this offense so had

4

WA 14741188.1

Case 2:11-cr-04025-BCW   Document 59   Filed 05/08/20   Page 4 of 11

never been ordered to appear. Further, Section 3C1.1 only applies to situations where the defendant *willfully* impedes the administration of justice. In order to act "willfully" for purposes of the enhancement, a defendant must act with the purpose of obstructing justice. *United States v. Collins,* 754 F.3d 626, 629 (8th Cir. 2014) (citations omitted).

Several courts have found that "mere flight in the immediate aftermath of a crime, without more, is insufficient to justify a section 3C1.1 obstruction of justice enhancement." *United States v. Paige*, 923 F.2d 112, 114 (8th Cir. 1991) (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990). *See also United States v. Hagan,* 913 F.2d 1278, 1284-1285 (7th Cir. 1990). Avoiding or fleeing from arrest is conduct to which section 3C1.1 is not intended to apply. U.S.S.G. 3C1.1 app. n5(d). *See also Paige*, 923 F.2d at 114.

The Eighth Circuit has considered similar scenarios in two cases. In *United States v. Billingsley*, the defendant was arrested when drugs were found in his apartment. 160 F.3d 502, 506 (8th Cir. 1998). Upon arrest, he began cooperating with police but backed out a few weeks later and left the jurisdiction without informing police. When he left, no charges had been filed against him nor was he under a judicial order to remain in the jurisdiction. The police, however, had conditioned his release on daily contact and had informed him that if he backed out on the cooperation agreement, he would be charged with various drug offenses. In *United States v. Hare*, 49 F.3d 47 (8th Cir. 1995), the Eighth Circuit affirmed the application of an obstruction enhancement to a defendant who agreed to cooperate in an investigation and then fled to Canada. Although both of these situations merited the application of the enhancement, they are both clearly distinguishable from Mr. Latifi's situation because there was never such a restriction, even a casual, non-judicial one, imposed on Mr. Latifi, militating against any finding of willfulness.

Neither is this case like *United States v. Chavez,* 833 F.3d 887 (8th Cir. 2016), which the Government cites in support of application of this enhancement. In *Chavez*, the defendant was charged and released on bond before departing the country. *Id.* at 888. He then returned to the United States, but not to Minnesota, where his charge was pending. *Id.* Years later he was ultimately transferred back to Minnesota, stood trial, and was found guilty. *Id.*

The present situation differs greatly from *Chavez*, where the defendant departed the jurisdiction after he was charged and bonded. Here, Mr. Latifi was originally interviewed by investigators in 2007 and again in 2008. Thereafter, the Government, not Latifi, significantly slowed the investigation for reasons that were not entirely clear. At times, several months elapsed between communications. During that time, the Government never sought or even suggested a restriction on Mr. Latifi's travel. In fact, Mr. Latifi traveled overseas four times between April and July 2010, after the investigation had concluded, but before he was charged. (Doc. 51, PSIR at ¶ 17). It is reasonable to conclude, then, that Mr. Latifi believed he was not prevented or restricted from traveling home to see his father. Application of the two level enhancement is inappropriate and should not be applied here.

### III. Section 3553(a) Factors

The appropriate range for a defendant's sentence "is arrived at after determining the appropriate Guidelines range and evaluating whether any traditional Guidelines departures are warranted." *United States v. Washington*, 515 F.3d 861, 865 (8th Cir. 2008). After giving both parties the opportunity to argue for the sentence they deem appropriate, the Court should consider the factors in 18 US.C. § 3553(a) to determine whether they support the sentence requested by the parties. *United States v. Braggs*, 511 F.3d 808, 812 (8th Cir. 2008). "The district court may not assume that the Guidelines range is reasonable, but instead 'make an individualized assessment

based on the facts presented.'" *Id*. (quoting *Gall v. United States*, 522 U.S.38, 50 (2007). *See also Nelson v. United States*, 555 U.S. 350, 352 (2008) ("Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable.").

Instead, after calculating a Guidelines range, a sentencing Court must consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors articulated in 18 U.S.C. § 3553(a). *Id.* The district court "has substantial latitude to determine who much weight to give the various factors under 3553(a)." *United States v. Ruelas-Mendez*, 556 F.3d 655, 657 (8th Cir. 2009); see *also United States v. Feemster*, 572 F.3d 455, 464 (8th Cir. 2009) (*en banc*). In setting a sentence, courts are compelled to consider the factors set forth in Section 3553(a), including the nature and circumstances of the offense, and history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant. The Section 3553 factors offer additional context for the Court's consideration.

As set forth in the Presentence Investigation Report ("PSIR"), Mr. Latifi is a 61 year old father of two who currently resides in Aliso Viejo, California. (Doc. 51 at p. 3). Mr. Latifi is a naturalized U.S. citizen who was born and raised in poverty in Iran. When he was approximately 20 years old, he immigrated to the United States to attend college. He ultimately obtained a Bachelor's and Master's degree in Electrical Engineering from the University of Missouri-Columbia. He remained in Columbia following his college education, eventually marrying and raising his two sons. Over time, Mr. Latifi owned several profitable restaurants and businesses in the Columbia area, often working two jobs and long overtime in order to provide for his family.

During the course of the years-long investigation into the allegations in this case Mr. Latifi diligently and consistently cooperated with the Government through several interviews.

The conduct leading to this charge is the very first time Mr. Latifi has been in adverse contact with law enforcement. He has been a loving father and a contributing member of the community, and a sentence of time-served, will allow him to continue in that role. Far from a history of misconduct or deception, he worked hard as a naturalized citizen to provide for his family. Mr. Latifi's involvement in the charged conduct was an aberrational departure from his professional life and personal commitments. The misstated shipping declaration is an anomaly, committed by an otherwise "law abiding citizen who [did] an incredibly dumb thing." *United States v. Hadash,* 408 F.3d 1080, 1084 (8th Cir. 2005) (affirming a downward departure based on 3553(a) factors).

The second and third factors under § 3553(a)(2) and (a)(6) weigh in favor of the purposed sentence. The proposed sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. *See* 18 U.S.C. § 3553(a)(2)(A). Mr. Latifi pleaded guilty to a lone count of 13 U.S.C. § 305, a relatively obscure, and rarely -prosecuted law, which demands that shippers accurately describe shipments leaving the United States. It is a minor, statutory offense; a victimless crime that needs no additional punishment other than the nearly three months Mr. Latifi has already served. The ongoing period of supervised release serves as an ongoing deterrent against the (relatively low) risk that Mr. Latifi could reoffend.

Finally, any sentence imposed must take into consideration the unusual circumstances of the COVID-19 pandemic. The ongoing threat of COVID-19, which poses a significant risk to Mr. Latifi's health if he is exposed, further justifies the parties' requested sentence of time served.

While Mr. Latifi is in custody he will have no means of protecting himself from the virus. He cannot self-isolate or practice careful hygiene. He must share space and amenities with other individuals and will be without masks or gloves to restrict dispersion of the disease.

Numerous courts have recognized that, while jails, prisons and other detention facilities are already "tinderboxes for infectious disease," these facilities are now even more dangerous than we typically accept. *United States v. Brown,* -- F. Supp.3d --, 2020 WL 2091802, *2 (S.D. Iowa April 29, 2020 (quoting *United States v. Rodriguez,* No. 2:03-CR-00271-AB-1, 2020 WL 1627331, *1 (E.D. Pa. Apr. 1, 2020). *See also* Mike Wilson, *3 Deaths and Rampant Infections at a Fort Worth Lockup Are Fueling Criticism of How Federal Prisons are Handling the Pandemic,* Dallas News (April 29, 2020).[1] As has been oft-reported in the press, the disease commonly spreads through asymptomatic and presympotamtic individuals. Given the stark lack of adequate testing across the country, to say nothing of within detention facilities, there is simply no way to know whether COVID-19 exists in an area until it is too late and individuals are sick. *See* Michael Balsamo, *Over 70% of Tested Inmates in Federal Prisons Have COVID-19,* AP (Apr. 29, 2020).[2] By that time it is detectible in a population, the virus can infect multiple people. Given Mr. Latifi's age, should such an infection spread to him while he is detained, the consequences could be catastrophic. The only way to adequately protect Mr. Latifi is to impose the agreed-upon sentence of 84 days with credit for time served, allowing him to remain at home, in California. A sentence of time-served is appropriate given the COVID-19 pandemic and the need to consider Mr. Latifi's unique vulnerabilities including the likelihood of infection. Any incarceration, even limited, poses a severe health risk to Mr. Latifi.

---

[1] Available at https://www.dallasnews.com/news/public-health/2020/04/29/3-deaths-and-rampant-infections-at-a-fort-worth-lockup-are-fueling-criticism-of-how-federal-prisons-are-handling-the-pandemic/.
[2] Available at https://apnews.com/fb43e3ebc447355a4f71e3563dbdca4f.

With regard to the issue of credit for time in custody, 18 U.S.C. § 3585(b) provides, in pertinent part, that "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed . . . that has not been credited against another sentence." Mr. Latifi was taken into custody on this case on September 26, 2019 and was released on December 19, 2019, a total of 84 days. As such, and pursuant to the agreement of the parties, the Court should impose and execute a sentence of 84 days incarceration, with credit for the time he was in custody.

Finally, pursuant to 18 U.S.C. § 3583, the authorized term of supervised release for a Class D felony such as this is "not more than three years." The Court, therefore, has the latitude to impose a term of less than three years. In determining the appropriate length of supervised release, Mr. Latifi respectfully suggests that the Court impose a one-year term of supervised release. Mr. Latifi has been on pretrial release for nearly five months without violation or incident, has aggressively sought and obtained employment in both locations he has resided (Springfield, Missouri and Aliso Viejo, California), and has proven himself to be diligent and reliable. The undersigned does not anticipate there will be special or complex conditions of supervised release that would require an extended term or close supervision. Mr. Latifi intends to continue full time employment in California and to abide by the terms of his release. As such, a one year term of supervision is appropriate in this case.

IV. **Conclusion**

For the foregoing reasons, the Defendant Massoud Latifi, respectfully requests the Court impose a sentence of 84 days with credit for time served in custody pursuant to 18 U.S.C. § 3583,

and a term of supervised release of one year, or such other term as the Court finds just and reasonable .

Dated: May 8, 2020

Respectfully submitted,

/s/ Patrick A. M<sup>c</sup>Inerney
Patrick A. M<sup>c</sup>Inerney   MO #37638
Carly D. Duvall   MO #61925
**SPENCER FANE LLP**
1000 Walnut, Suite 1400
Kansas City, Missouri 64106-2140
Tele: 816-474-8100
Fax: 816-474-3216
Email: pmcinerney@spencerfane.com
      cduvall@spencerfane.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on this 8th day of May, 2020, I caused the foregoing to be filed using the Court's e-filing system, which will automatically transmit a copy to all parties.

/s/ Patrick A. M<sup>c</sup>Inerney
Attorneys for Defendant

11

Case 2:11-cr-04025-BCW   Document 59   Filed 05/08/20   Page 11 of 11

WA 14741188.1